Johnson, J.
The case made by the special verdict may be more concisely stated thus: — Administration on the estate of J. L. Sompeyrac, deceased, had been granted by the Ordinary to Madam Benoist, and upon her death, administration de bonis non was granted to the plaintiff, John B Thompson, who was neither of the kindred nor a creditor of the deceased. This was done without actual notice to Madame Desire B. S'ompey-rac, the widow of the deceased, who resides in Bordeaux, in France, and who, by letter of attorney duly authenticated, constituted the defendant, Charles Hucket, her attorney in fact, to administer and settle the estate, and upon his application the Ordinary revoked the administration granted to Thompson, and committed it to Hucket, and the case came before the Court in the form of an appeal from the order of the Court of Ordinary revoking Thompson’s administration, and involves the question, whether the Ordinary had authority to revoke the administration on the application of Hucket, without other cause shewn,
In the argument here, it has been insisted for the that this question is concluded by the judgement of the Court in the case of Thompsons. The Ordinary of Charleston, decided here at the last term, which came before the Court on an appeal from an order made by Mr. Justice Bay, granting a writ of prohibition to restrain the ordinary from revoking the administration granted to Thompson ; and it is true that Mr. Justice Earle, who pronounced the judgement of the Court, does throw out a pretty decided opinion that the Ordinary had no such authority ; but upon looking into it, it will be found *348 that the.' question was expressly reserved until the hearing of* this appeal, and a prohibition nisi was granted, that it might be brought up in this form for the final judgement of this Court, That opinion is not therefore binding upon the Court, either as authority or as res judicata.
At the common law, the Ordinary had the power to grant administration to whom he pleased, and revoke it at his pleasure. Toller’s Law of Ex’ors, 121. But this authority is regulated, and in some degree restrained, by the act of the legisla, ture of 1789. Pub. Laws, 492, which directs that administration shall be granted to the husband or wife; — if there be none such or they do not apply, then to the child or children or their legal representatives ; in default of these, then to the father or mother; in default of these to the brothers or sisters; in default of these to such of the next of kin, at the discretion of the Ordinary, as may be entitled to a distributive share of the estate ; and in default of these, to the greatest creditor or creditors, or such other person as the Ordinary may appoint.
As a rule prescribed by the Legislature, this act is imperative so far as it designates the persons entitled to the administration, and leaves the' Ordinary no discretion. Thus, if there be a husband or wife, and in default of these a father or mother, he is bound to grant administration to them. But when the persons entitled are designated in the act as a class, as brothers or sisters, or next of kin, the Ordinary must of course exorcise a discretion in selecting from the class ; and the cases decided on the statute of 21 H. 8, which in this respect is like the act of 1789, are very full upon the point, that.having once exercised his discretion, the Ordinary has executed his power, and cannot repeal that administration and commit it to another of the same class. Toller’s Law of Ex’ors. 121-2-3. And on the argument of this cause, I was very much inclined to the opinion that when neither the kindred nor creditors applied, and administration was granted to a .stranger, that the same rule would apply, and that the Ordinary, having once exercised his discretion, could not revoke that administration and commit it to another stranger. But upon further consideration, I am satisfied that the Ordinary has the power- to revoke administration granted to a stranger — That he has, for the purpose of letting in those who are especially designated in the act, and is bound to do so upon their application, can admit of no doubt; and I think he may do so in favour of another stranger.
By the common law, as before remarked, the Ordinary had authority to grant and revoke administration at his pleasure, and that rule must still prevail, except as it is altered by the act. In the absence of kindred and creditors, the Ordinary is authorized by the act to grant the administration to any person *349 that he may think proper; and that was precisely the power which he was entitled to exercise by the common law. The act contains, neither in direct terms nor by necessary implication, so far as X have been able to discover, any prohibition against the exercise of the correlative common law right of repealing the administration at pleasure. All the reasons on which the common law rule is founded, apply in their full force in support of the power of revocation, when the grant is merely arbitrary; and that is the state in which the act has left the appointment. I do not intend to be understood to say that the power may be exercised capriciously, for that would tend unnecessarily to increase the expense, and might operate greatly to embarrass the administration. But I can perceive no evil in permitting it, when the change of the administrator is solicited by the persons interested in the estate, and when there is reasonable cause to suppose that the administration would be better conducted, even by another stranger. The object of granting the administration is to place the estate in the hands of one bound to manage it to the best advantage for the interest of those concerned; and in the . absence of any binding rule, and when the Ordinary is left to the exercise of his discretion, he ought not to bo controlled in following it out to the attainment of the object. It may be said that there would be danger in the capricious exercise of this discretion, but as contra-distinguished from that, there is a sound and reasonable discretion, and the temporal Courts take upon themselves the authority to judge of the sufficiency of the cause for repealing an administration. Com. Dig. Adm’or. B. 8. Blackborough v. Davis, 1 P. W. 42; and in this way the supposed evil may be corrected.
It is stated in the special verdict, that no act of mal-admin-istration was alledged against Thompson, and we are now to consider whether the Ordinary had power to revoke it for the purpose of committing it to Hucket, the nominee of the widow of the deceased.
No case was cited at the bar, nor have I been able to find any in the books, in which a contest for the administration has arisen between a stranger and the nominee of the person entitled, or in which the administration has been granted to such nominee. But the English books of reports contain very many cases in which the administration has been granted to such nominee, and although the question was not raised, the language of some of them would seem to imply that it was matter of right. In Freswell v. Moore, 3 Phillimore, 135, Thomas Matthew Field, by his will, appointed Mary Moore and Mrs. Dodwell his executors, and with a view to give them as little trouble as possible,, he states in his will that he had “ entrusted " Mrs. Freswell, the plaintiff, (who is fully acquainted with the “ subject,) to collect all rents and interests, and pay all such *350 “demands as are or may be due thereon,” &c. and adds: “ The interest on this increasing stock Mrs. Freswell may be “ enabled to receive, by my executors granting her a power of “ attorney to do so,” &c. “ This process I desire to be continued for seven years.” The executors refused to qualify, and the administration was claimed for Mrs. Freswell, on the ground that she was entitled to be executrix according to the tenor of the will; but it was resisted by a nephew who resided in New South Wales, who had come over with.letters of attorney from three other persons residing there, who were residuary legatees, and Sir John Nicholl says, “ if this person is come over with competent authority from' the other residuary legatees, I do not see how I can refuse administration to him,” evidently laying stress on the circumstance that he had authority from other residuary legatees. In Howell v. Metcalf, 2 Adams’ Eccles. Rep. 35, the plaintiff, the guardian of the residuary legatee, a minor, prayed administration for her use and benefit, limited until she should attain twenty-one years of age. The executors residing abroad, administration was accordingly granted to him. In the goods of Don Francisco Rioboo, (2 Adams’ Ecc, Rep. 461) a limited administration was granted to the substituted attorney of the executors, who resided abroad. In Stanley a. Barnes, 1 Haggard, 221, administration Was granted tó the nominees of the persons ontitled to the estate, who resided abroad ; and so in the cases of the goods of the Elector of Hesse, 1 Hag. 93, and in the goods of Sidi Hamet Benemore Beggin, 1 Adams, 340; and in Campbell v. Graham, 1, Russel v. Myline, 454, it is said that administration had been granted, in Jamaica, to James Graham, as the attorney in that island of the next of kin. In the goods of Mary Keane, 1 Hag. 692, a distinction seems to have been taken between the nominee of a resident and non-resident next of kin. The brother who was resident and entitled to the administration, declined accepting it, and it was granted to the nephew, who had no interest in the estate, and the Court say: “ The nephew had no interest, yet to whom could the grant be decreed 1 The deceased’s brother, the sole next of kin, waived his right, and being resident within the province, it could not pass, for his use and benefit, to his attorney;” which would seem to imply that the attorney of the next of kin residing abroad, would be preferred to a resident kinsman further removed from the blood of the deceased. And in Toller’s Law of Ex’ors, page 108, it is expressly said that administration may be granted to the attorney of all executors, or of all the next of kin, provided they reside out of the province; but if the effects are under £20, such administration may be granted whether they are resident or not. But I am not prepared to go that length, nor is it necessary to this case.
*351 la the absence of kindred and creditors, it is entirely discretionary with the Ordinary to whom he will grant the administration, as well by the common law, 'as under the act of 1789. At common law he had the power of revoking administration at pleasure, and as before shewn, there is nothing in the letter or spirit of that act to divest him of that power in relation to .strangers, although the temporal Courts may control him in the exercise of it, by judging of the sufficiency of the grounds on which he proceeds. Now the cases referred to are not relied upon as shewing that the Ordinary is bound to grant administration to the nominee of the person entitled, whether resident or non-resident, but they go to show very conclusively that such nominee, particularly of a non-resident, generally is, and ought to be, preferred •, and the C ourt cannot take upon itself to say that the Ordinary has not exercised a sound judicial discretion in revoking administration to a stranger, and granting it to one who would have been preferred, although not entitled in strict right.
From any thing that appears in the'special verdict, Madame Sompeyrac and her son, if he be living, are the only persons having any interest in this estate — no one else is concerned in the increased expenses, or the embarrassments and delays incident to the revocation of the old and granting a new administration ; and if she thinks proper to submit to these, she has the right to do so. That consideration ought not, therefore, to weigh any thing in the determination of the question ; and I am not prepared to say that the Ordinary has not exercised a sound discretion in revoking the administration to Thompson.
It may be collected from the special verdict, that a bill had been filed in the Court of Chancery, in the name of Madame Benoist, the former administratrix, which had abated on her death, and that Madame Sompeyrac had written to her solicitor, requesting him to proceed with that suit, and that Thompson had accepted the administration at the request of the solicitor, to enable him to revive the suit. It is also stated that Madame Sompeyrac had, at the time of granting this administration, an attorney (A. Fourgeaud) residing here, and these. circumstances are relied on as shewing that she had constituted her solicitor her agent to nominate an administrator, and had, by her attorney, in fact acquiesced in it. When it is recollected that Madame Sompeyrac was a foreigner, resident abroad, and most probably ignorant of our laws and of what was necessary to enable the solicitor to proceed with the suit, it would be straining for a construction to suppose that by this general request she had a settled purpose to authorise the solicitor to nominate an administrator. She might have reasonably supposed that her attorney in fact, (Fourgeaud) would *352 have attended to that matter, and for any thing that appears, his neglect to do so might have operated to induce her to re« voke his powers and transfer them to Hucket.
Cross, for the motion.
Hunt, contra.
It has been Said that the administrator has a vested right, in the administration, of which the Ordinary has no power to divest him ; — That is true when the administration is conferred on him by law. But when the grant of administration is discretionary, the administrator takes'it subject to the power of revocation.
It is therefore Ordere.d that the. judgement of the Circuit Court be set aside and reversed, and that the postea be delivered to the defendant, Hucket.
Harper, J. concurred.
O’Neall, J. absent.